

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00429-CV

**IN THE INTEREST OF Y.Z., N.A.Z., J.F.Z., AND V.V.Z.**, Children

From the County Court at Law, Val Verde County, Texas
Trial Court No. 3814CCL
Honorable Sergio J. Gonzalez, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: February 10, 2021

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her children Y.Z., N.A.Z., J.F.Z., and V.V.Z. (collectively, "the children").[1]  Mother challenges the sufficiency of the evidence supporting the statutory predicate grounds for termination as well as the sufficiency of the evidence supporting the trial court's finding that termination was in the children's best interests.  We affirm the trial court's order.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and the children by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The trial court's order terminates both Mother and Father's parental rights to the children, but only Mother appeals the trial court's order.

BACKGROUND

Prior to the filing of this termination suit, Mother and Father had an extensive history with the Texas Department of Family and Protective Services (the "Department") dating back to August 2012. The Department initially became involved in the underlying case on July 30, 2018, when it received a report alleging "the children always look dirty." At that time, the removal affidavit states Y.Z. had bruises all over from being hit by Mother and Father, that Mother and Father were under the influence of illegal drugs while caring for the children, the children were living in unsanitary conditions, they did not appear to have enough food to eat, and their heads were covered with lice that were causing open sores and rashes.[2] The Department also believed domestic violence had occurred between Mother and Father in front of the children.

While the Department's case was open, the Department offered Mother and Father services including parenting classes, a referral to drug assessment through OSAR[3], and counseling. The Department also required Mother and Father to take random drug tests. While Mother did make progress under the family-based services, she nevertheless repeatedly tested positive for methamphetamines, cocaine, and marijuana. Mother voluntarily placed the children in a Parent Child Safety Placement ("PCSP") with a caregiver chosen by Mother after Mother tested positive for cocaine on December 17, 2018.

On July 25, 2019, the Department filed a petition for termination of parental rights and sought non-emergency removal of the children because Mother and Father continued to test positive for drugs. Ultimately, the children were placed in foster homes, with the exception of J.Z., who was placed in a residential treatment center.

---

[2] The removal affidavit was attached to the petition and admitted into evidence at trial.
[3] Outreach, Screening, Assessment, and Referral.

On June 8, 2020, and July 7, 2020, the trial court held a bench trial. Mother attended the trial and testified on her own behalf. The trial court also heard testimony from the three younger children's therapist, Denise Saucedo; Mother's therapist, Dr. Rachel G. Yates; and caseworkers Tanya Hernandez and Rustee Flood. On August 3, 2020, the trial court signed an order terminating Mother's parental rights to the children. Specifically, the trial court terminated Mother's parental rights based on four statutory predicate grounds in section 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), and (P). The trial court also found that termination of Mother's parental rights was in the children's best interest. *See id*. § 161.001(b)(2). Mother appealed.[4]

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the children. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine

---

[4] Father did not appeal the trial court's order.

whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*,

279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

### STATUTORY GROUNDS FOR TERMINATION

On appeal, Mother argues the evidence is legally and factually insufficient to support each of the statutory predicate grounds for termination.

Only one predicate ground finding under section 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the children's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, our analysis is usually complete if we conclude that the evidence is sufficient to support any single predicate ground. Because the findings under section 161.001(b)(1)(D) and (E) have consequences for termination of parental rights as to other children, termination on these grounds implicates significant due process concerns for Mother. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019). Due process requires us to review the trial court's findings under both sections 161.001(b)(1)(D) and (E) of the Texas Family Code. *See In re C.W.*, 586 S.W.3d 405, 407 (Tex. 2019) ("[W]hen a trial court makes a finding to terminate parental rights under section 161.001(b)(1)(D) or (E) and the parent challenges that finding on appeal, due process requires the appellate court to review that finding and detail its analysis.").

Here, the trial court found evidence Mother "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren] . . . [and] engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren] . . . ." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). While both subsections D and E focus on endangerment, they differ regarding the source and proof of endangerment. *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *2 (Tex. App.—San Antonio Mar. 11, 2020,

pet. denied) (mem. op.). Subsection D concerns the children's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the children's environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection E, the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *Id.*

*Statutory Subsection D*

The statutory ground for termination found in subsection D allows for termination of parental rights if the parent "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). The children's "environment" encompasses the suitability of the children's living conditions and the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child[ren]'s home can create an environment that endangers the physical and emotional well-being of [the children] as required for termination under subsection D." *Id.* "Parental and caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *J.T.G.*, 121 S.W.3d at 125 (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)). "[A] parent need not know for certain that the child[ren are] in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.). Subsection D permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

Under Subsection D, the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical

or emotional well-being." *J.T.G.*, 121 S.W.3d at 125. Parental conduct, however, is a factor that contributes to the children's environment. *Id.* The time period relevant to a review of conduct and environment under statutory ground D is prior to the children's removal. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

*Statutory Subsection E*

Subsection E permits termination if the parent has "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection E, endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment . . . ." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Instead, endanger means to expose the children to loss or injury or to jeopardize his or her emotional or physical well-being. *Id.* The trial court must determine "whether evidence exists that the endangerment of the child[ren]'s physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). "It is not necessary that the parent's conduct be directed at the child[ren] or that the child[ren] actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d at 110; *see also In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."). "Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care." *In re A.B.R.*, 2020 WL 1159043, at *3. "[E]ndangering conduct is not limited to actions directed towards the child[ren]."

*J.OA.*, 283 S.W.3d at 345. "It necessarily follows that the endangering conduct may include . . . evidence of drug usage." *Id*.

*Discussion*

Because the same evidence relates to subsections D and E, we combine our analysis of these predicate grounds for termination. *See A.B.R.*, 2020 WL 1159043, at *3 (citing *J.T.G.*, 121 S.W.3d at 126).

Tanya Hernandez, a family-based specialist with the Department, who handled the children's case from September 2018 to August 2019 and aided the family in obtaining services before the termination petition was filed, testified the children were living in filthy conditions under Mother and Father's care. According to Hernandez's testimony, the family's house was littered with food and clothes, did not contain air conditioning during the summer months, and some of the windows were shattered at the time of removal. As to the condition of the children, Hernandez testified "they were dirty," did not own properly fitting clothes, their clothes were not being washed regularly, and they all had severe cases of head lice. Hernandez's removal affidavit also stated the head lice resulted in the children suffering from open sores and rashes on their heads. Hernandez further testified the parents were offered family-based services that resulted in some improvement, but the parents continued to test positive for illegal drugs throughout the case.[5] Hernandez's removal affidavit stated Mother voluntarily admitted herself into a rehabilitation center on June 17, 2019, but checked herself out less than two weeks later against the advice of the professionals at the rehabilitation center.

---

[5] According to Hernandez's removal affidavit, Mother tested positive five times for illegal drugs between September 2018 and August 2019. The positive tests were conducted on October 18, 2018, December 17, 2018, January 24, 2019, April 8, 2019, and June 17, 2019. Mother failed to comply with the Department's request for drug tests on February 15, 2019, February 21, 2019, and February 28, 2019. Mother was informed these missed tests would be presumed positive.

Rustee Flood, the Department caseworker who started handling the case in October 2019, testified the Department created a service plan for Mother that included parenting classes, therapy, addressing the domestic violence issues, a substance and alcohol abuse assessment, and random drug testing. Flood testified Mother did not engage with the required services until two months prior to trial and was not compliant with the random drug tests required under the service plan. While she was the caseworker, Flood stated the Department requested Mother take random drug tests on at least ten different occasions between October 2019 and May 2020. Mother only complied with two of the requests and tested positive for marijuana on May 27, 2020.[6] However, Flood acknowledged Mother missed one of the drug tests because the testing clinic was closed due to COVID-19, and Mother was unable to take another drug test because she failed to show valid identification. Flood further testified Mother did not complete her alcohol and substance abuse assessment until the month before trial. Flood testified she was concerned that Mother had fallen into a cycle of substance abuse where she would overcome her dependency on drugs when there was Department intervention, and then relapse into substance abuse once the Department was no longer monitoring them. Flood stated this pattern has occurred repeatedly over the last decade, resulting in a traumatic childhood experience for all four of the children.

Denise Sauceda—N.A.Z., J.F.Z., and V.V.Z.'s therapist—testified that the three younger children have all experienced traumatic childhoods.[7] As a result, Sauceda has diagnosed all three of the younger children with post-traumatic stress disorder ("PTSD"). Sauceda elaborated that the onset of PTSD was due to the children being neglected by their parents while Mother and Father were using drugs, as well as witnessing many instances of domestic violence. She testified the

---

[6] On cross-examination, Flood admitted Mother also had a hair follicle drug test on May 27, 2020. The hair follicle test results were negative while the urinalysis test from the same day came back positive.

[7] Y.Z. did not participate in therapy with Sauceda. Y.Z.'s therapist was not called to testify at trial.

children experience separation anxiety, have nightmares, and are often nervous and fidgety. Sauceda went on to state the children experience anxiety, depression, and mood swings as a result of their childhood trauma. Sauceda further testified the children were progressing well in their current placements and reunification with Mother would result in confusion and emotional setbacks for the children.

Dr. Rachel Yates, Mother's therapist, testified Mother did not begin to engage with her therapy until the end of April 2020. Dr. Yates testified Mother needed therapy to work through her traumatic past, including domestic violence issues and drug abuse. Dr. Yates stated she was encouraged by Mother's progress in the two months prior to the trial, but Mother's engagement and progress came too late in the case for her to recommend reunification with the children. Dr. Yates further testified Mother had not been able to show sobriety over an extended period of time, and she was worried Mother would relapse into substance abuse because of the severity of her past addiction. Dr. Yates's report, which was admitted into evidence, states that Dr. Yates understands the children "don't want the chaos, disruption, pain and fear of living with drug[-]using[,] emotionally[-]vacant people" and she is "concerned with the impact of an extension [in the case] and lack of permanence on the children." On cross-examination, Dr. Yates reiterated her concern of overstating the importance of Mother's progress over the two months prior to trial given the chaos the children had experienced over the last decade with the repeated Department intervention, domestic violence, and drug abuse.

Mother admitted at trial that she was under the influence of crack-cocaine and marijuana while caring for the children, and during the pendency of this case. Mother testified she "really wasn't taking care of [the children]" while she and Father had custody of them and were using illegal drugs. Moreover, Mother conceded the children were aware that she and Father were using illegal drugs while they were caring for the children. Mother testified the children's home life

prior to the Department's intervention was verbally hostile and unpleasant. However, Mother also testified she was no longer dependent on illegal drugs, and she had been sober for the last month. Mother testified she was currently employed, owned a car, and was able to pay her bills without outside help. Mother further testified she was living in a furnished apartment sufficient to shelter the children.

In sum, Mother admitted to using illegal drugs while she was charged with caring for the children. *See A.B.R.*, 2020 WL 1159043, at \*4 ("Evidence of illegal drug use supports a conclusion that a child's surroundings endanger his or her physical or emotional well-being."). Mother also conceded the children knew when she was under the influence of drugs and the drug use resulted in a chaotic and unstable environment for the children. Moreover, Sauceda and Dr. Yates both testified Mother's substance abuse resulted in her neglecting the children and created an environment that was chaotic and traumatizing for the children. *J.L.B.*, 2017 WL 4942855, at \*3 ("[B]ecause a parent's illegal drug use exposes her children to the possibility the parent may be impaired or imprisoned, evidence of illegal drug use supports a finding that the parent engaged in a course of conduct that endangered the children's physical or emotional well-being."). Mother's continued substance abuse created instability in the home and led to unsuitable living conditions for the children. This evidence supports a conclusion that Mother's drug abuse led to neglectful supervision and care for the children which resulted in a course of conduct and an environment that endangered the children. *See In re G.A.*, No. 01-11-00565-CV, 2012 WL 1068630, at \*6 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, pet. denied) (mem. op.) (holding a parent's drug use can endanger a child's physical or emotional well-being); *J.T.G.*, 121 S.W.3d at 125 (holding a parent's illegal drug use supports conclusion that environment endangers physical or emotional well-being of children).

Further, witnesses testified the children were exposed to domestic violence while they were living with Mother and Father. *See In re R.S.-T.*, 522 S.W.3d at 110 ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment."). While the domestic violence was not directed at the children, the trial court could have formed a firm belief or conviction that the exposure to the violence created an environment that endangered the children. *See id.* ("It is not necessary that the parent's conduct be directed at the child[ren] or that the child[ren] actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards.").

Viewing all the evidence in the light most favorable to the trial court's judgment, we conclude a reasonable trier of fact could have formed a firm belief or conviction Mother "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren] . . . [and] engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Thus, the evidence is legally sufficient to support these findings. Further, after considering the entire record, including any disputed or contrary evidence, we conclude the evidence is factually sufficient to support the trial court's termination findings under subsections 161.001(b)(1)(D) and (E) of the Texas Family Code.

Having determined the evidence is legally and factually sufficient to support the trial court's finding on these statutory grounds, we need not consider whether the evidence would support termination under subsections (O) and (P). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

## BEST INTEREST OF THE CHILDREN

Mother further argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights was in the children's best interest.

When considering the best interest of the children, we recognize the existence of a strong presumption that the children's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the children in a safe environment is in their best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the children with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[8] *See id.* § 263.307(b). We also consider the *Holley* factors.[9] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child[ren]'s best interest,

---

[8] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; . . . (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time . . . .

*See* TEX. FAM. CODE ANN. § 263.307(b).

[9] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

particularly if the evidence were undisputed that the parental relationship endangered the safety of the child[ren]." *Id.* In analyzing these factors, we must focus on the best interest of the children, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child[ren]'s best interest." *Id.*

Here, Flood testified Y.Z. desires to be adopted by her former foster mother. Y.Z.'s former foster mother has expressed a willingness to adopt Y.Z. According to Flood, Y.Z. has also expressed a desire to have some relationship with Mother, but enjoys having the comfort and care of a stable and safe home. Y.Z.'s former foster mother has expressed she is willing to allow Y.Z. to have a relationship with Mother following termination so long as it is an appropriate and safe relationship.

Sauceda testified the foster mother to the three younger children is nurturing and a good caretaker, and she believed it would be in the best interest of the children to stay in their foster placement.[10] Flood testified N.A.Z. and V.V.Z. wish to be adopted by their foster mother. Flood also stated the foster mother for the younger children would be open to allowing them to have a

---

[10] J.F.Z. is currently being treated in a residential treatment center, but Sauceda stated it is unclear when J.F.Z. will be able to return to his foster placement.

continued relationship with Mother so long as it was appropriate and safe. *See In re I.A.M.*, No. 04-16-00095-CV, 2016 WL 4208126, at *9 (Tex. App.—San Antonio Aug. 10, 2016, no pet.) (mem. op.) (noting evidence that children expressed their wishes to remain in their current placement when affirming the trial court's best-interest finding).

Flood testified J.F.Z. still harbors hurt and anger from his childhood experiences while living with Mother and Father, and that he suffers from some mental issues. Flood stated it was in J.F.Z.'s best interest to remain in the residential treatment center so J.F.Z. can receive help dealing with those issues and be returned to the previous foster placement and adopted into the foster family.

Sauceda testified N.A.Z. has improved in her current placement. According to Sauceda, N.A.Z. is able to vocalize her feelings and express that she needs time away from her younger siblings so she does not have to feel responsible for them. Sauceda opined N.A.Z. was moving away from a mothering role with her younger siblings to a big sister role. Sauceda further testified all three younger children were able to express their emotions with her and are currently able to use their coping skills in their current placement. *See In re A.M.M.*, 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) (indicating evidence the children are "thriving in the current placement" in a "stable and nurturing environment" supported the trial court's best-interest determination.).

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (citing *In re S.D.*, 980 S.W.2d at 763). Flood testified the children are now able to focus on themselves and experience happy and healthy childhoods in their current placements. Flood further testified the cycle of "[s]ubstance abuse and domestic violence and neglect of the children has been going on since Y.Z. was five . . . and it hasn't

changed." Flood went on to say the cycle of substance abuse and emotional trauma for the children would get "better when there was [Department] intervention" but after corrections were made and the Department was no longer involved, "the cycle repeated itself." Sauceda testified the three younger children have all experienced trauma and harm from the frequency of neglect and domestic violence while they were living with Mother and Father. Sauceda stated reunification would result in emotional setbacks and confusion for the children. As previously mentioned, Dr. Yates's report regarding Mother states that Dr. Yates understands the children "don't want the chaos, disruption, pain and fear of living with drug[-]using[,] emotionally[-]vacant people" and she is "concerned with the impact of an extension [in the case] and lack of permanence on the children." Thus, the trial court could have formed a firm belief or conviction that the children's present and future emotional and physical needs were best served by termination. *See J.L.B.*, 2017 WL 4942855, at *7 ("A child's need for permanence is a paramount consideration for the child's present and future physical and emotional needs."). Contrary to Mother's argument, the trial court could have also formed a firm belief or conviction that reunification—or naming Mother possessory conservator rather than terminating parental rights—would present future emotional and physical danger to the children. *See id.* ("A factfinder may infer from a parent's past inability or unwillingness to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future.").

Finally, the trial court could have considered Mother's extensive history of drug abuse discussed in the statutory grounds section above. *See In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at *5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.) ("Continued illegal drug use [by the parent] . . . is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child."). Mother testified she is no longer dependent on drugs and there is some

evidence that she has made significant improvement in the two months prior to trial. However, "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *J.O.A.*, 283 S.W.3d at 346 (rejecting an appellate court's attempt to attribute greater weight to parent's recent improvements and less to parent's past challenges in its legal sufficiency review).

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice